Good morning, your honors. Harry Williams, on behalf of Lindsay Tofsrud, I have Ben Gould here with me as well. The district court's summary judgment order should be reversed because Lindsay Tofsrud produced evidence that showed that she was subject to a hostile work environment. Tofsrud's supervisor created an objectively offensive environment when he repeatedly rubbed his front against Ms. Tofsrud. Mr. Williams, let's assume for a moment that I totally agree with you that your client provided sufficient evidence to show a prima facie case. Didn't, however, the Postal Service provide a complete affirmative defense to that? No, and I think that the Postal Service actually fails on both prongs of the Farragher-Ellis defense. For instance, the evidence shows that Ms. Tofsrud was never given specific training on how to report sexual harassment. Wait, wait, wait. I thought that all the New Worker Orientation included information about that. That's ER 75 through 76, that there were posters all around showing how to report such an incident with a toll-free number. Is that incorrect? That is partially incorrect. Let me divide that into two things. First, at ER 184, that's part of the Post Office's internal investigation after Tofsrud's report. The Post Office writes that Tofsrud did not complete any anti-harassment training. The training she did receive was part of a general video at the beginning of her service. That was the only training she received, and that video, according to her testimony, and that's not disputed anywhere, only told her that she could report that sexual harassment to her supervisor. Now, as to this, the poster issue, at ER 220, which is the beginning of the Post Office's own internal investigation report, or I'm sorry, that's just the beginning of it, at ER 230, that report notes that there was only one relevant poster in the facility, and that poster, which is at ER 236, there's a copy of it, it's blurry, but there is a copy of it, doesn't have any 800 number to report to the EEOC. So there is contradictory testimony from the Post Office itself as to whether there were a number of posters. Their internal investigation says only one. That poster from what it says at ER 236 doesn't have an 800 number. Okay, well, I take your point there. What about all that Stacey Jasmer did in encouraging her to stay on, removing Kennedy from his supervisory role, doing the internal investigation, suspending him, depriving him permanently of any supervisory role, and prohibiting him from applying to other positions for a year? Fairly quickly done, your client was offered an opportunity to stay, different place, same everything else. She declined. Why didn't the Post Office provide a complete affirmative defense in that regard? Well, I guess I have three responses to that. First, if they lose on whether they trained her, they lose their affirmative defense. And I think that we win on their lack of training. Why is that? Because it's their burden to show that they met both prongs of that. So the fact that they remediated isn't sufficient to make up for the fact that they didn't train her in the first place on their affirmative defense. Second, if the – sorry, I lost my train of thought for a second. So although they offered several things, they weren't sufficient for a couple of reasons. First of all, the accommodation that they offered would have left Tofsrud in proximity to Kennedy, as close as 20 to 30 feet. There was no guarantee at the time that she resigned that he wasn't going to become a supervisor again. He was suspended from his supervisor duties immediately, but there was no guarantee to Tofsrud that she wouldn't be supervised by him again. And if you look at the Swenson v. Potter case from 2000 or 2001 from this court, and it talks about how the separation needs to be proportionate to the harassment because the post office didn't credit the physical harassment that Tofsrud had in terms of this rubbing and in terms of the persistency of Kennedy's conduct. It didn't offer sufficient separation in that Swenson case. This court found that the separation was sufficient, but that was going to be about once a month that the person who'd been harassed might interact with her harasser. Here, virtually every time Tofsrud went to work, there would be a couple of hours where she might work only 20 or 30 feet away from Kennedy, and he might still be a supervisor. I do not think that meets their affirmative burden. Who has the burden of proof on that? On the defense? To show whether what they proposed in terms of remediation was adequate. They have the burden of proof. And who reviews that? Under what standard? Under what standard? Well, we're here on summary judgment, so I think that, well, first of all, the district court didn't reach that. Right, I understand that. So they have to meet the burden by a preponderance of the evidence, I believe. I'm not positive. But they don't meet that, and there are certainly disputed facts about both prongs of the Farragher-Ellert defense, both because she didn't receive specific training on sexual harassment and because I don't think that their procedures afterwards were adequate. So, and I think it's very clear, the district court erred in saying that there was not an objectively offensive environment. Kennedy made inappropriate comments. He persistently threatened to fire Tofsrud, and he actually hit her once. When we compare this case to other cases, I would specifically direct the court to Davis v. Team Electric and the Craig v. M&O Agencies case. The situation here is at least as serious as those cases. In Davis, for instance, there was, as this court found, only mild comments made. There was no physical contact. And just as here, there was no really aggressive sexual comments. But this court said, well, there's a triable issue on summary judgment. And I think the same thing has to be true here. Because of the persistent threats of firing, because of the physical contact that her direct supervisor made, both the sexualized rubbing as well as the hit, as well as all these comments, do I need to get a new girlfriend? Why do you need time off? Mr. Winkler, let's assume arguendo, that you're correct about the prima facie case, but you have the post office coming back with this affirmative defense. What should we do if that's the situation? Do we send it back to the district court for further fact-finding? Is there enough information in the record about the affirmative defense to make a determination at the court of appeals level? What's your recommendation in that hypothetical situation? I think that this case should be remanded for trial. I think that there is sufficient evidence that shows that Tofsred wasn't trained on sexual harassment and that the measures weren't sufficient and that, therefore, it should go back to trial. I'd like to reserve the rest of my time. May I just ask you one question? The district court didn't reach the affirmative defense? That is correct. What made you discuss that issue in your opening brief? Because it is, they argue as a question of law that they reached that, but the district court dismissed the case or granted summary judgment based on its finding that there was not an objectively offensive environment. But it did discuss at some length what Stacey Jasmer did and so on, so there were findings as far as the court was concerned, right, whether or not it characterized them as affirmative defenses. Yes, and so because this court could affirm on any basis. Okay. Thank you. Good morning, Your Honors. May it please the court, counsel. Rudy Vershoor, representing the U.S. Postmaster General. This case can easily be affirmed on several bases, and first and foremost, the Farragher-Ellert affirmative defense is dispositive in this case. There is no doubt, based on the record, that the Postal Service did what it was supposed to do that they took actions to both prevent and correct the sexual harassment, and that Ms. Tofsrud was, in fact, trained in how to make a report of sexual harassment. Was she trained as supervisor or manager or counsel, your opposing counsel said just supervisor? She was trained to report either to a supervisor or a manager, and Stacey Jasmer's declaration in the supplemental excerpt of the record specifically states she was trained to report either to a supervisor or a manager, and I think that's significant. The other significant part regarding the managers is Ms. Tofsrud, in fact, knew how to make a report to a manager. She had a previous incident where this other employee threw a plastic tub in front of her, and she went to Dave Kennedy and said, I'd like to work on a different machine, and he said no. Ms. Tofsrud went directly to the manager of distribution operations, Dave Scheidemann, told him about it, and then Mr. Scheidemann told Kennedy, put her on a different machine. She knew to go to a manager. On November 7th of 2008, when she wanted to report the sexual harassment or when she wanted to actually submit her resignation, she went to Scheidemann, again a manager, not a supervisor. She went to a manager. So she can say, I didn't know how to do that, but in fact she did, and I think that's fatal to her case. What is the standard by which we make this determination at this point? You've got the district judge had the prima facie case before him. He had the affirmative defense of the post office before him. He's obviously doing some weighing in a summary judgment situation, but how should we as a court of appeal be looking at this at this point? What standard do we use? Whose burden is it? It is the employer's burden, and the standard is a preponderance of the evidence. And so you, this court, would look at what has been submitted on the record from both sides and determine by a preponderance. Summary judgment? Yes, Your Honor. Would determine whether there was sufficient evidence that the government, or in this case the employer, the U.S. Postal Service, presented evidence of that affirmative defense. Did they have a system in place to report it? Did they use it effectively? Was Ms. Tofstrud trained on how to report harassment? Well, there can be factual disputes over those questions, in which case it wouldn't be preponderance of the evidence. There could be factual disputes, but in this case there's almost no factual disputes except Ms. Tofstrud's self-serving affidavit that said I wasn't trained. Self-serving affidavits. Of course, when you submit an affidavit, it's supposed to help your case. Yes, sir. And then lawyers always come up and say, well, it's self-serving. Well, what else should it be? I mean, who else should it serve? Well, two things, Your Honor. This Court has said that self-serving affidavits aren't enough at summary judgment, and what Ms. Tofstrud or any other party in her position needs to do is present objective evidence. We've said that affidavits aren't good on summary judgment? This Court has said that there are, in cases, that self-serving affidavits with the conclusory. Oh, you're talking about sham affidavits. Well, that's true, but I think it You're not contending this is a sham affidavit, are you? There is a small piece of it that I thought was, but no, not in this context, Your Honor. But the evidence that the government submitted, that the Postal Service submitted, was so overwhelming that this Court can't decide by a preponderance of the evidence they met the affirmative defense. Was there evidence that there were posters throughout the workplace that told the employees who to contact? Yes, Your Honor. Ms. Jasmer testified in her declaration that there were at least two posters in the Processing and Distribution Center, one of which had this 1-800 number. And I think that's important, too, in that anyone seeing that would recognize, well, I'm not reporting it to Dave Kennedy, the supervisor, or one of the other part-time supervisors. This is going somewhere outside of this building to be reported. And I think that's very significant. So she was, in fact, besides the video training she had at Orientation regarding sexual harassment, these posters were also there. And when you add that to the fact that she, in fact, twice went to Mr. Kennedy, it tells you that she knew how to report this sexual harassment. Well, it said there were two posters and one had the phone number on it. Yes, Your Honor. Where was that one poster located? I believe Ms. Jasmer said one was located. Well, there was only one with the phone number, you said. Yes, I believe that one. I'm not sure where she said. I believe it's the one that was near the employee break room, but I'm not positive as to where that specific one is located in the building. Is it in the affidavit? I could look real quickly, but I'm not sure. I did want to discuss briefly in the short time I have the other defense we raised, which is the failure to exhaust. Before you get to that, the second part was whether the relief offered really resolved the problem. I think that the plaintiff says that accepting that relief would make her work in very close proximity to the person who offended her, the supervisor or semi-supervisor, that she would work in very close proximity to her and that would not satisfy her problem. Is that correct? That is what she said. I think the relief consists of more than where they offered to move Ms. Tofsrud, which was in the automation department, at least away from Mr. Kennedy. The other thing is the fact that he was removed as a supervisor almost immediately suddenly makes it so he's very unlikely to have any – well, he's not going to have any supervisory contact with her. And the Swenson v. Potter case makes it very clear that the complainant is not guaranteed an environment free of the harasser. So they couldn't have just fired him or moved him completely away. She was offered to be moved into a different department at the processing distribution center besides having Mr. Kennedy removed as a supervisor. And, therefore, there's separation there that's enough to meet this affirmative defense. In this case, as I understand it, they were basically in a discussion. They're trying to get her to stay. She basically didn't want to hear any of it. There was no negotiation like she didn't say, like, you're putting me too close to this guy. I want to be over here. She just didn't want to hear any of it, right? That's correct. She flatly rejected any other accommodation they were willing to make for her. And it's fairly apparent she had already made up her mind to leave. I mean, she makes this disclosure to Ms. Jasmer three days before her final day at work, not when she resigned approximately two or three weeks beforehand. Does an employee in this situation have any kind of a good faith obligation to engage with management trying to make things right here before being able to claim that there was just an unreasonable response on behalf of the post office? And, if so, what are you relying on? I think there is the constructive discharge cases talk about that, that an employee who leaves without giving the employee an opportunity to work out the problem has not been constructive with discharge. Now, constructive discharge, it wasn't challenged in this appeal. But I think that case law is applicable because it does impose some obligation for some give and take, some discussion, something Ms. Toffs drew did not give the employer at all. The failure to exhaust, I just wanted to touch, because it's very clear that she, Ms. Toffs, who did not make her complaint of a discrimination within 45 days of a discriminatory event. And for a federal employee, they've got 45 days. The discriminatory event happens. They have 45 days to report it to an EEO counselor. If they do it on the 46th day, they haven't exhausted their administrative remedies and the court lacks subject matter jurisdiction. It's undisputed that she made her first contact with the EEO counselor on January 8th of 2009. If you count back 45 days from that, she ends up in November 23rd. And she has not alleged any discriminatory action from November 23rd on. That's five days before she quits. Mr. Kennedy, the person who's accused of, the sole person accused of this discrimination, is on vacation and not present. So she hasn't shown any discriminatory event within the 45-day limitation period. In fact, the last discriminatory event she talks about is the tapping on the chin on October 22nd. And if you project that out 45 days, she had to talk to an EEO counselor by December 6th of 2008. She didn't do that. She was at least a month later than that. That defense is also dispositive in this case. Well, as I understand it, the district court found that the triggering event was the meeting with Jasmer on November 25th, 2008. Yes. And Toffred met with the EEOC counselor within 45 days of that event. Why doesn't that satisfy the exhaustion of administrative remedies issue? The federal regulations require 45 days to report to an EEO counselor. And this court in Johnson v. Henderson specifically said the reporting to a supervisor is not enough. That's out there. And she may have talked to Ms. Jasmer in that time, but did not talk to an EEO counselor within the 45-day limitation period. And I think that's dispositive of her case. Thank you, Your Honors. Thanks. I just have a couple of quick points. First, on the burden, that's on page 18 of our reply brief on this affirmative defense. And the burden is that no reasonable fact finder could fail to find that the post office has met its burden. I just wanted to clarify that. Second, I'd like to redirect the court once again to ER 230, which is the post office's own internal report saying that there was one poster, and that poster is at ER 236. And I think that shows very clearly that there's an issue of material fact and that Ms. Jasmer's affidavit is disputed by the post office itself. Is there a requirement that there be more than one poster, any regulation or anything, or is it just an appraisal that a fact finder would make? It looks like something that they're looking to see if they've met their burden. That's what it looks like from the report to me. And what it shows is that that fact finder only saw one poster, and that poster doesn't have anything that would show how she could go around the chain of command where she reports directly to her supervisor, Kennedy, first. I'd also like to point out that at ER 251, this has to do with the investigation. At ER 251, Ms. Jasmer says to Ms. Toffs-Rudis, she's reporting the sexual harassment, let's not let Greg Fleming, a friend of Kennedy's, see us. That could be bad. I think what that shows is that the investigation was inadequate because it wouldn't have given Toffs-Rudis comfort to know that the manager herself was in some apprehension of Mr. Kennedy and his allies. Thank you, counsel. Thank you. The case just argued will be submitted. The court will take a brief recess before the next case.
judges: Schroeder, Reinhardt, Smith